**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **VARTOUHI PINKSTON,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**SAMUEL WADE MCCORD,**<br><br>*Defendant.* | **CIVIL ACTION NO.<br>5:26-cv-00316-TES** |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Pro se Plaintiff Vartouhi Pinkston filed a Complaint on July 29, 2026, against Defendant Samuel Wade McCord in his individual capacity. [Doc. 1]. In it, she argues via 42 U.S.C. § 1983 that Defendant deprived her of her right to access the courts in violation of the Fourteenth Amendment. [*Id.* at p. 15]. Defendant filed a motion to dismiss, which is ripe for review. [Doc. 5].

**<u>LEGAL STANDARD</u>**

Through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1,*

*Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a complaint will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Twombly*, 550 U.S. at 572. In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to a plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Therefore, to decide whether a complaint survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.*

After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* A plaintiff may use legal conclusions to structure a complaint, but they *must* "be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Finally, the issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. A complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

## FACTUAL BACKGROUND

Plaintiff owns two homes in Macon-Bibb County, Georgia. [Doc. 1, ¶ 6]. At some point before the events began that led to this lawsuit, the State filed two writs of fieri

facias ("fi. fa.") against one of her houses.[1] [*Id.* at ¶ 7]. On April 14, 2025, Defendant cancelled the two fi. fa. writs. [*Id.*]. What followed over the next few years was a series of Defendant filing fi. fa. writs on Plaintiff's properties, and Plaintiff seeking legal action in state court. [*Id.* at ¶¶ 7–17].

On September 2, 2025, Defendant recorded a fi. fa. writ against one of Plaintiff's houses. [*Id.* at ¶ 12]. Defendant recorded three more on October 17, November 6, and December 23, 2025, as well as two on June 10, 2026.[2] [*Id.* at ¶¶ 14–17, 46]. The September 2 and October 17, 2025, writs had "identical [fi. fa.] numbers" as the two writs that were cancelled on April 14, 2025, which each contained the following note: "THIS RECORD WAS FILED ON 4/14/2025, DELETED BY ERROR FROM THE LOCAL SYSTEM ON 5/13/2025, AND RESTORED TO THE RECORD ON 5/22/2025." [*Id.* at ¶¶ 25–26].

During this same timeframe, Plaintiff filed an assessment appeal for both houses with the Macon-Bibb County Board of Tax Assessors on June 5, 2025. [*Id.* at ¶ 9]. She appealed the resulting decision to Bibb County Superior Court. [*Id.* at ¶ 10]. Her appeal was ultimately dismissed a year later. [*Id.* at ¶ 20]. Following the dismissal, Plaintiff went to the courthouse "several times" to "file papers and attempt to inquire into

---

[1] A fi. fa. writ is "a writ of execution that directs a marshal or sheriff to seize and sell a judgment debtor's property to satisfy a money judgment." Fieri Facias, Black's Law Dictionary (12th ed. 2024).

[2] Although not entirely clear, Plaintiff seems to allege that she received two additional fi. fa. writs. On July 3, 2026, Plaintiff received two fi. fa. letters from Defendant. [Doc. 1, ¶ 53]. The letters each state: "*This fi.fa. was issued on June 18, 2026*." [*Id.* at ¶ 55]. She also alleges that all her fi. fa. writs were "non-state-backed," though the Court addresses this specific allegation in more detail below.

Defendant's [fi. fa. writ] recordings and cancellations . . . ." [*Id.* at ¶ 31]. On May 6, 2026, she filed a motion to set aside the dismissal of her appeal, arguing a lack of subject matter jurisdiction. [*Id.* at ¶ 28]. At the same time, she requested information from the Superior Court clerks and asked them questions regarding the notes on the cancelled writs. [*Id.* at ¶¶ 29–30]. On May 12, 2026, she filed a notice of appeal with the Bibb County Superior Court.[3] [*Id.* at ¶ 34]. She filed a motion to correct the record that same day, and an amended notice of appeal the following day. [*Id.* at ¶¶ 35, 47]. At some point during Plaintiff's questions and repeated filings, the clerks in the office became frustrated with her. [*Id.* at ¶¶ 32–33].

Two weeks after she filed her amended notice of appeal, Plaintiff returned to the courthouse to file "two additional documents." [*Id.* at ¶ 36]. She never filed them because two security officers told her, "[i]f you ever walk into the Clerk's office ever again, you will be placed under arrest." [*Id.* at ¶ 38]. Ever persistent, Plaintiff attempted to file her papers anyway, but the deputy clerk refused and told her to file them at a public library kiosk. [*Id.* at ¶¶ 41–42]. When Plaintiff pressed for a reason, the clerk told her that she is "very difficult to talk to," and doesn't listen. [*Id.* at ¶ 43]. That same day, she was "officially notified that she was permanently, physically banned from entering

[3] She does not allege that she appealed to the Georgia Court of Appeals, so it is not entirely clear what this notice of appeal is.

the Bibb County Superior Court Clerk's office under penalty of immediate arrest." [*Id.* at ¶ 44].

The Superior Court denied Plaintiff's motion to set aside on June 8, 2026. [*Id.* at ¶ 45]. Four days later, Plaintiff filed a motion to dismiss her own appeal for lack of subject matter jurisdiction. [*Id.* at ¶ 48]. The board of tax assessors joined in Plaintiff's motion to dismiss. [*Id.* at ¶ 50]. Plaintiff quotes part of the board's brief in her complaint. According to Plaintiff, the board said:

> BOTA now concurs with Plaintiff's analysis that this Court lacked subject matter jurisdiction by operation of O.C.G.A. § 48-5-29. BOTA therefore respectfully requests this Court grants Plaintiff's Motion to Dismiss. As such,…the thirty day appeal from this decision has now lapsed under O.C.G.A. § 48-5-311(g)(2).

[*Id.*]. The Superior Court vacated its previous order and granted Plaintiff's motion to dismiss. [*Id.* at ¶ 51]. Plaintiff filed her complaint in this Court on July 29, 2026. [Doc. 1].

## **DISCUSSION**

Based on the lengthy fact pattern above, Plaintiff brings one claim against Defendant in his individual capacity. In it, she argues that Defendant violated her "absolute right to an independent, *de novo*" review in the Georgia Court of Appeals by "intentionally injecting false data into" the record and "corrupting" it such that the record showed a lack of subject matter jurisdiction through Defendant's "unauthorized recordings and retractive [sic] alterations of the GED." [*Id.* at ¶¶ 56, 58, 59]. In simpler terms, Defendant's fi. fa. writs "stripped the Georgia Court of Appeals of its

jurisdiction," and "permanently blocked" her path to that court. [*Id.* at ¶¶ 58, 60]. Defendant filed a motion to dismiss Plaintiff's claim. In it, he argues that he is entitled to qualified immunity, and that Plaintiff failed to state a claim. [Doc. 5-1, p. 1].

The Court begins with qualified immunity. *Murray v. City of Lavonia, Georgia*, No. 3:05CV83 CDL, 2007 WL 988765, at *4 (M.D. Ga. Mar. 30, 2007) ("Since [qualified] immunity protects government officials from liability and suit, it is necessary to address the issue of qualified immunity first."). Qualified immunity "shields government officials who perform discretionary functions from civil liability when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Edwards v. Grubbs*, 179 F.4th 909, 924 (11th Cir. 2026) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)). "Qualified immunity is more than 'a mere defense to liability.'" *Pace v. Capobianco*, 283 F.3d 1275, 1285 (11th Cir. 2002) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). It is immunity from suit—designed "to absolve government officials from any prolonged litigation practices." *Id.* (citing cases).

To receive qualified immunity, "a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Edwards*, 179 F.4th at 909 (quoting *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016)). Acting within discretionary authority means that the actions were "(1) undertaken pursuant to the performance of the official's duties and (2) within the scope

of [his] authority." *Hale v. Mukes*, No. 1:20-CV-146 (LAG), 2023 WL 7109683, at *3 (M.D. Ga. Sept. 12, 2023) (quoting *Collier v. Dickinson*, 477 F.3d 1306, 1307 n.1 (11th Cir. 2007)) (alterations accepted).

To make this showing, Defendant points to O.C.G.A. §§ 48-3-3(b) and (d). Section 48-3-3(b) requires the tax commissioner to "issue executions for nonpayment of taxes collectable by the . . . tax commissioner at any time after 30 days have elapsed since giving notice as provided in subsection (c) of this Code section." [Doc. 5-1, p. 5 (quoting § 48-3-3(b))]. One such "execution" is a fi. fa. writ. Fieri Facias, Black's Law Dictionary (12th ed. 2024). Section 48-3-3(d) states that

> [n]o execution shall be issued against any person who is not the owner of record of the property on the day that the taxes become delinquent if, within 90 days from the due date, such person has provided satisfactory proof to the . . . tax commissioner that the property has been transferred by recorded deed and the liability for the payment of ad valorem taxes has been assigned to the vested transferee by written agreement or contract.

Reading the two sections together, Defendant argues that the tax commissioner must exercise "judgment and discretion" to determine whether the statutory requisites are met and then issue writs of execution for delinquent property. [Doc. 5-1, p. 5]. Defendant's argument is sufficient to meet his burden. He was acting within the scope

of his discretionary authority when he issued the fi. fa. writs against Plaintiff's properties because fi. fa. writs are within the tax commissioner's duties.[4]

Next, the burden shifts to Plaintiff to show that qualified immunity does not apply. *Edwards*, 179 F.4th at 909. To do so, she must show "(1) a violation of a constitutional right (2) that 'was clearly established at the time of [Defendant's] alleged misconduct.'" *Id.* (quoting *Underwood v. City of Bessemer*, 11 F.4th 1317, 1328 (11th Cir. 2021)). She must establish both prongs to overcome qualified immunity. *Id.* Additionally, "[a]nalysis of qualified immunity 'must be undertaken in light of the specific context of the case, not as a broad general proposition . . . .'" *Alexander v. City of Muscle Shoals, Ala.*, 766 F. Supp. 2d 1214, 1241 (N.D. Ala. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Since Plaintiff explicitly replied to Defendant's arguments about the clearly established requirement, the Court begins there. [Doc. 6, pp. 2–3]; *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288 (11th Cir. 2009) (courts do not have to analyze a plaintiff's qualified immunity burden in order). There are three ways Plaintiff may show her alleged right was clearly established:

---

[4] To show that Defendant was not acting within his discretionary authority, Plaintiff argues that Defendant "possessed zero legal authority" to execute the fi. fa. writs because they were "non-state-backed," meaning "the State of Georgia was no longer an active party to the underlying matter." [Doc. 1, ¶ 66]; [Doc. 6, p. 2]. However, Plaintiff's only argument that the fi. fa. writs were not state-backed is that the writs "completely omitted" the word "state," and instead only included "school and county" or "Macon Bibb County." [Doc. 1, ¶¶ 12, 54]. Clearly, these were, to use Plaintiff's language, "state-backed."

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (citation and quotation marks omitted). Only decisions by the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court of the pertinent state (Georgia, here) can clearly establish law. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

Plaintiff did not cite any cases showing this right was clearly established, even after Defendant pointed out this deficiency. [Doc. 6, pp. 2–3]; [Doc. 5-1, p. 6]. To be sure, under Federal Rule of Civil Procedure Rule 8, pro se parties are not required to cite specific statutes or cases to support their claims. *McConnell v. Adams*, No. 5:24-cv- 00461-TES, 2025 WL 1073709, at *3 (M.D. Ga. Apr. 9, 2025). With that said, "[e]xcept in the most extraordinary instances, [the clearly established] burden *requires* the plaintiff to come forward with examples of 'preexisting law that make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue.'" *Alexander*, 766 F. Supp. 2d at 1240 (quoting *Youmans v. T.A. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010)). Regardless, the Court gave Plaintiff leniency and conducted its own search of caselaw, which did not reveal a clearly established right under these circumstances.

Plaintiff has not established that the alleged constitutional right was clearly established under the two remaining methods either. She claims that, "under long-standing constitutional principles, this fundamental right" of unhindered access to the courts "is violated with absolute **Obvious Clarity** when a state actor records non-state-backed" fi. fa. writs, "and by doing so, deliberately corrupts the GED, manufactures an artificial jurisdictional defect, and strips the Georgia Court of Appeals of its Subject Matter Jurisdiction." [*Id.* at p. 2]. While she does assert "constitutional principles," she does not point to anything within the Constitution that would provide a clearly established right under these circumstances. Furthermore, she has not shown conduct "so egregious" as to make the right clearly established because the tax commissioner can issue fi. fa. writs. Since Plaintiff has not met her burden, Defendant is entitled to qualified immunity.

Even if she had met her burden, Plaintiff fails to state a claim because she has not pointed to state action that denied her due process and has not shown that she was seeking to pursue a nonfrivolous claim. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003); *Aruanno v. Martin Cnty. Sheriff*, 343 F. App'x 535, 537 (11th Cir. 2009).

Because the Defendant is entitled to qualified immunity, Plaintiff has failed to state a claim upon which relief could be granted. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim. [Doc. 5]. The Clerk is **DIRECTED** to enter **JUDGMENT** in favor of Defendant and to **CLOSE** the case.

**SO ORDERED**, this 17th day of September, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**